UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| PATRICIA A. LOVATTO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 1:19-cv-00498-TLS-SLC |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, *sued as Andrew M. Saul,* ) | |
| *Commissioner of Social Security,*` ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Patricia A. Lovatto appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB"). (ECF 1). The appeal was referred to the undersigned Magistrate Judge on December 30, 2019, by District Judge Theresa L. Springmann pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72(b), Northern District of Indiana Local Rule 72-1(b), and this Court's General Order 2018-14A for the issuance of a Report and Recommendation. (ECF 7).

Having reviewed the record and the parties' arguments, I FIND that one of Lovatto's three arguments in support of a remand is persuasive, and accordingly, RECOMMEND that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings. This Report and Recommendation is based on the following facts and principles of law.

### I. FACTUAL AND PROCEDURAL HISTORY

Lovatto applied for benefits in April 2017, alleging disability as of October 1, 2016. (ECF 9 Administrative Record ("AR") 27, 188-91). Lovatto's claim was denied initially and upon reconsideration. (AR 79-104). After a timely request (AR 127-28), a hearing was held on July 23, 2018, before administrative law judge ("ALJ") Genevieve Adamo, at which Lovatto, represented by counsel,

and a vocational expert testified (AR 51-78). On November 27, 2018, the ALJ rendered an unfavorable decision to Lovatto, concluding that she was not disabled because she could perform a significant number of jobs in the economy despite the limitations caused by her impairments. (AR 27-45). Lovatto's request for review was denied by the Appeals Council (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner, *see* 20 C.F.R. § 404.981.

Lovatto filed a complaint with this Court in November 2019, seeking relief from the Commissioner's decision. (ECF 1). In her appeal, Lovatto alleges that the ALJ erred in evaluating her physical residual functional capacity ("RFC"), her mental impairments; and her subjective symptoms. (ECF 16 at 7-21).

At the time of the ALJ's decision, Lovatto was fifty-one years old, and her work history included nurse aide, cashier, and home attendant. (AR 43). In her application, Lovatto alleged disability due to acid reflux, edema, blind in left eye, ruptured cyst removed, high blood pressure, anxiety, high cholesterol, migraines, pancreatitis, and Addison's Disease. (AR 216).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner … , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the ALJ applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner … are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d

2

209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant is entitled to DIB if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to … last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: "(1) whether the claimant is currently [un]employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) … whether she can perform her past relevant work; and (5) whether the claimant is incapable of performing any work in the national economy."[1] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); *see also* 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

---

[1] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations. 20 C.F.R. §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

### B. The Commissioner's Final Decision

On November 27, 2018, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 27-45). At step one, the ALJ concluded that Lovatto had not engaged in substantial gainful activity since October 1, 2016, the alleged onset date. (AR 29). At step two, the ALJ found that Lovatto had the following severe impairments: lumbar degenerative disc disease with history of fusion at L5-S1, left eye blindness, and obesity. (AR 30).

At step three, the ALJ concluded that Lovatto did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 35). Before proceeding to step four, the ALJ determined that Lovatto's symptom testimony was not entirely consistent with the medical evidence and other evidence of record with respect to her limitations. (AR 37). The ALJ assigned Lovatto the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She is limited to no more than a moderate noise environment. She must avoid concentrated exposure to wetness. She must avoid slippery, uneven surfaces, unprotected heights, and dangerous moving machinery. She cannot perform jobs that require precise depth perception or peripheral vision on the left side. No commercial driving. She must have a sit/stand option after 30 minutes.

(AR 36). Based on the assigned RFC and the vocational expert's testimony, the ALJ found at step four that Lovatto was unable to perform her past relevant work as a nurse aide, cashier, or home attendant. (AR 43). However, the ALJ found that jobs exist in significant numbers in the national economy that Lovatto can perform. (AR 44). Therefore, Lovatto's application for DIB was denied. (AR 45).

### C. Analysis

#### 1. The ALJ Did Not Err in the Physical RFC Determination

Lovatto asserts that the ALJ erred in the physical RFC determination by failing to properly consider her vision impairment and her need for a sit-stand option.

4

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (second emphasis omitted). That is, the "RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.*; *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1).

It is the province of the ALJ to craft the RFC and to resolve conflicts in evidence when doing so. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). "The administrative law judge is not required or indeed permitted to accept medical evidence if it is refuted by other evidence – *which need not itself be medical in nature* …." *Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009) (quoting *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir 1995)).

At the same time, "[w]hen an ALJ denies benefits, [she] must build an accurate and logical bridge from the evidence to her conclusion, and [she] may not 'play doctor' by using [her] own lay opinions to fill evidentiary gaps in the record." *Chase v. Astrue*, 458 F. App'x 553, 556-57 (7th Cir. 2012) (citations and internal quotation marks omitted). The ALJ must articulate which medical or treatment records "provide support for her opinion" and not leave the Court guessing "whether there is support for the RFC determination" or "fabricate[] [the RFC] out of whole cloth." *Betts v. Colvin*, No. 13-cv-6540, 2016 WL 1569414, at *3 (N.D. Ill. Apr. 19, 2016); *see Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("No doctor concluded that Larson's symptoms were just a response to situational stressors as opposed to evidence of depression. The ALJ's conclusion to the contrary thus finds no support in the record.").

 a. Vision Loss

Lovatto first argues that the ALJ failed to fully account for her left eye vision loss in the RFC. The ALJ provided for her vision loss in the RFC by finding that she could not perform jobs that require precise depth perception or peripheral vision on the left side, as well as no commercial driving. (AR 36). The ALJ noted that although Lovatto has a history of eye retinal detachment, this "appears to be controlled with yearly visits to her ophthalmologist, without further surgery since the alleged onset date."

(AR 39). The ALJ also noted that her vision appears to be sufficiently corrected with glasses, and that she can drive. (AR 39).

Lovatto appears to take particular issue with the ALJ's decision not to include near acuity and far acuity in the RFC determination. The state agency medical consultants found that Lovatto had limitations with near acuity, far acuity, depth perception, accommodation, and field of vision in her left eye. (AR 86-87, 100). The ALJ found these opinions persuasive. (AR 40). Lovatto asserts that because the ALJ found these opinions to be persuasive, she should have included all of the limitations in the RFC.

However, the ALJ is "not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians" in making her RFC determination. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (citing *Diaz*, 55 F.3d at 306 n.2). Although the ALJ found the state agency consultants' opinions to be persuasive, she was not required to adopt every single portion of their opinions in the RFC. The final responsibility for determining the RFC lies with the ALJ. *See* 20 C.F.R. § 404.1546(c); *see also Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) ("[T]he determination of a claimant's RFC is a matter for the ALJ alone – not a treating or examining doctor – to decide.").

The ALJ looked to evidence available at the hearing level and found that Lovatto's vision impairment appeared to be controlled with yearly visits to her ophthalmologist, and she noted that Lovatto was able to drive and read large print. (AR 35, 37, 39, 827-30). The ALJ properly supported her decision with evidence in the record. Lovatto offers no evidence that the ALJ was incorrect in finding that her vision impairment was controlled with yearly appointments. Lovatto's own hearing testimony stated that with glasses she is able to drive during the day and can read large print and watch television. (AR 39, 56, 67-68). In fact, when asked about her vision impairment, Lovatto herself stated she only had peripheral vision troubles, as well as a nighttime driving restriction. (AR 67). She also testified to struggling with threading a needle, but stated that she can read with large print and is capable of driving during the daytime. (AR 56, 68). Therefore, the ALJ properly relied on medical evidence and Lovatto's own testimony in crafting the physical RFC. While Lovatto argues that this is mere speculation, the ALJ

properly supported her opinion with medical evidence in the record. Lovatto provides no medical evidence or other evidence in the record that would contradict the ALJ's findings.

      b.  Sit-Stand Option

Lovatto makes a similar argument regarding the sit-stand option in the RFC. The ALJ provided that Lovatto "must have a sit/stand option after 30 minutes" in the RFC. (AR 36). The ALJ based this need on Lovatto's subjective pain with sitting, standing, and walking, while taking into consideration that she was capable of working part time, could perform light household chores, and spent time with friends. (AR 39, 41). Lovatto's treating physician, Dr. Rowena Yu-Mendador, opined that Lovatto would need to shift positions from sitting to standing or walking but would not need a cane or assistive device, and the ALJ found that opinion to be "generally persuasive." (AR 41, 760). Lovatto testified that she thought she could perform a job from a seated position if she were allowed to get up and "move around" every thirty minutes to an hour. (AR 69).

Lovatto argues that the ALJ erred by allowing a sit/stand option but failing to provide for the ability to move around. The ALJ properly supported her RFC determination with substantial evidence. The ALJ took into account Dr. Yu-Mendador's opinion, which does not specify the need to walk around. Rather, it states the need to shift positions from seated to standing or walking. (AR 760). The ALJ took this opinion, as well as Lovatto's lack of need for an assistive device, to mean that Lovatto could complete work with a sit/stand option every thirty minutes. (AR 36, 41). The state agency physicians, whose opinions the ALJ found persuasive, found that Lovatto could perform light work with numerous non-exertional limitations. (AR 40-41, 85-88, 99-101). The ALJ further limited Lovatto's RFC to include a sit/stand option based on Lovatto's testimony about her pain and need to change position. (AR 40-41). Lovatto offers no evidence that showed she would need to walk away from her work station. The ALJ properly supported her decision as to the sit/stand option, and Lovatto offers no sound reason in fact or law to require remand on this issue.

Lovatto also argues that the ALJ erred by failing to ask the vocational expert to consider whether Lovatto "may" be off task while shifting positions to relieve her pain. (ECR 16 at 9). However, Lovatto

offers no evidence that she would be off task while shifting positions. Lovatto bears the burden of showing she would be off task while shifting positions. *Clifford*, 227 F.3d at 868; *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994). While Lovatto may speculate that she would be off task during position changes, the ALJ could sensibly conclude otherwise given Lovatto's testimony that she could perform work if allowed to switch positions. Lovatto offers no evidence that she would be off task, and the ALJ did not err in failing to ask the vocational expert to consider off-task behavior doing position changes.

  2. The ALJ Erred in Evaluating Lovatto's Mental Impairments

Lovatto contends that the ALJ erred in finding that Lovatto's mental impairments were non-severe impairments. The ALJ found that her mental impairments were non-severe because she had no more than mild limitations in all four of the paragraph B criteria. (AR 31-34). Lovatto argues that the ALJ improperly relied on the state agency psychologists' opinions, who did not have all of her mental health records. The only mental health records available to the state agency psychologists were from her primary care physician and the consultative examination. Her primary care physician prescribed her Paxil for her generalized anxiety disorder in 2017. (AR 575). The consultative examiner diagnosed Lovatto with depressive disorder and generalized anxiety disorder. (AR 607-10). The state agency psychologists did not have any of the mental health treatment records from the Bowen Center, which consisted of over 130 pages of mental health treatment notes. (AR 842-978). Lovatto asserts that her symptoms worsened after the state agency psychologists reviewed her claim, and that the missing treatment notes corroborated her worsening symptoms.

In evaluating her mental health impairments, the ALJ noted that Lovatto did not start receiving treatment for her mental impairments until September 2017, which was well after her alleged onset date, and that Lovatto reported improvement with medications and therapy. (AR 42, 901, 910-22, 966-74). The ALJ considered the opinions of the state agency psychologists to be very persuasive, noting that the opinions were consistent with the history of Lovatto's mental health treatment, which the ALJ found to be generally controlled through medications and therapy. (AR 42). Moreover, the ALJ observed that although Lovatto did experience worsening depression after her spinal fusion surgery, a month after

surgery she had improved with medication and her mental status examination was "essentially benign." (AR 32, 941, 943, 945-47).

However, this is a mischaracterization of the record. Lovatto had multiple medication changes from September 2017 through May 2018. (AR 880, 884, 928, 934, 938, 973). While the ALJ found that Lovatto had improved on medication, her mental impairments were noted as "Improved, Not Controlled" in November 2017 (AR 928) and "Stable, Not Controlled" in June 2018 (AR 846-47). Other records from the Bowen Center showed that Lovatto's mental impairments were not controlled over various times throughout her treatment. (AR 846-47, 962-63, 873-74, 891-92, 914, 924-25, 934-35, 944). Shortly after Lovatto began her part-time work in March 2018, her mood was described as "Stable, Worsening," and she reported increased agitation regarding co-workers. (AR 880-81). The ALJ failed to acknowledge the need for medication changes and dosages throughout 2017 and 2018, which indicated that Lovatto's mental impairments were not as stable or controlled as the ALJ indicated.

The Commissioner attempts to rectify this by arguing that one of the medication changes was due to side effects and not due to worsening symptoms. However, Lovatto's medications were adjusted multiple times throughout 2017 and 2018, and only one of those changes was due to side effects. (AR 799, 833, 850, 873, 928, 938, 947, 973). The Commissioner relies on portions of the evidence that show Lovatto was not experiencing symptoms while ignoring other evidence to the contrary. For instance, the Commissioner relies on Lovatto denying psychiatric problems in November 2017 when seeing her primary care physician, and that she reduced therapy to once every two weeks in December of 2017. However, Lovatto also reported continued auditory hallucinations in November 2017 to the Bowen Center, and her impairments were reported to be "Not Controlled." (AR 924-25). While she also reported that therapy was "really working," she continued to report auditory hallucinations as well. (AR 919).

The medical records from the Bowen Center show that while Lovatto was experiencing improvements in some areas, she also continued to suffer from symptoms in other areas. The ALJ improperly cherry-picked small portions of the record while ignoring the evidence to the contrary in the

9

same records. More problematically, the state agency psychologists were unable to review the majority of Lovatto's mental health records. These mental health records showed Lovatto's need for frequent medication changes, new diagnoses, and struggles she was experiencing as she started part time work. (AR 833, 850, 873, 880-81). "ALJs are not qualified to evaluate medical records themselves, but must rely on expert opinions." *Enriquez v. Saul*, No. 1:19-CV-182 DRL, 2020 WL 2125237, at *3 (N.D. Ind. May 5, 2020) (citation and brackets omitted); *see Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) (remanding because the ALJ improperly "played doctor"). The ALJ not only mischaracterized and cherry-picked the evidence from Bowen Center, but also improperly relied on the state agency opinions where the state agency psychologists did not have access to Lovatto's mental health records. Had the state agency psychologists had the evidence from the Bowen Center, their opinions may have been different, as the evidence showed mental health concerns not present in the rest of the medical record. The ALJ relied on the state agency psychologists' opinions in finding that Lovatto's mental impairments were non-severe, yet the state agency psychologists were missing over 130 pages of mental health treatment notes. The ALJ then mischaracterized the evidence in those 130 pages of mental health treatment notes. The ALJ's errors in evaluating Lovatto's mental health impairments requires remand.

      3. <u>The ALJ Did Not Err in Evaluating Lovatto's Subjective Symptoms</u>

Finally, Lovatto asserts that the ALJ erred in considering all of the factors in Social Security Ruling 16-3p when evaluating her subjective symptoms.

"In determining whether an individual is disabled, [the ALJ is to] consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). An ALJ's consideration of a claimant's symptom testimony is entitled to special deference because the ALJ is in the best position to evaluate the credibility of a witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and she articulates her analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988) (citation omitted), creating "an accurate and logical bridge between

the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citation omitted), her determination will be upheld unless it is "patently wrong," *Powers,* 207 F.3d at 435. *See Ray v. Berryhill*, 915 F.3d 486, 490 (7th Cir. 2019) (stating that with respect to an adverse credibility determination, it is a "rare case in which the claimant can overcome the 'considerable deference' [the court] afford[s] such findings unless they are 'patently wrong'" (citation omitted)); *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's consideration of a claimant's symptom testimony because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness").

The regulations require the ALJ to analyze a variety of factors in making a determination of a claimant's subjective symptoms. These factors include: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medications; any additional treatments an individual receives for relief of symptoms; any non-treatment measures taken to relieve symptoms; any other factors concerning an individual's functional limitations and restrictions due to symptoms. SSR 16-3p, 2017 WL 5180304, at *4.

The ALJ found that Lovatto's medically determinable impairments "could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely consistent with the medical evidence . . . ." (AR 37). The ALJ noted that although Lovatto alleges disabling physical symptoms, her back pain was treated conservatively following her surgery, and she was not taking any pain medication nine days after surgery. (AR 37-38). The ALJ also noted that Lovatto improved with physical therapy, and that although she was still reporting pain, she had normal strength, normal reflexes, and no sensory deficit. (AR 38). She was also capable of taking care of her elderly parents, was ambulatory without an assistive device, and had normal gait and normal movement on physical examination. (AR 38). The ALJ also considered that Lovatto went to the YMCA to walk the track, shopped at Walmart, attended mass, participated in community organizations, took pain medications despite claims that they made her sick,

11

worked part time, attended a concert, enjoyed reading, and organized a group for families with family members struggling with addiction. (AR 40). The ALJ also discussed Lovatto's ability to complete light household chores, her ability to cook simple meals, and her ability to handle her own finances. (AR 40).

Lovatto first argues that the ALJ's discussion of her symptom testimony was based on meaningless boilerplate. However, the use of boilerplate language is not automatic grounds for remand. *See Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016). The use of boilerplate language is only grounds for remand where the ALJ fails to support the subjective symptom analysis. Lovatto then argues that the ALJ engaged in impermissible cherry-picking of the medical evidence. For instance, Lovatto asserts that the ALJ should have considered the fact that Lovatto presented to the consultative exam using a cane. However, the ALJ properly considered the evidence in the record, and found that Lovatto did not require a cane and regularly presented with normal gait. (AR 38-39, 41). The ALJ also found her treating physician's opinion to be persuasive, and her treating physician opined that she did not need an assistive device for ambulating. (AR 38-39, 41). Lovatto also takes issue with the ALJ's finding that the objective evidence did not correlate with the intensity of her alleged pain and argues that the medical evidence does not mean she did not need to shift positions. However, the ALJ provided for position changes every thirty minutes in the RFC, and she noted that Lovatto's impairments would cause limitations, just not to the extent that Lovatto alleged. (AR 36-37). The ALJ does not dismiss Lovatto's pain, but rather finds that her pain would not cause the limitations to the extent she alleges. The ALJ did not err in relying on medical evidence and Lovatto's own testimony in finding that her pain did not require the functional limitations she alleged.

Lovatto also asserts that the ALJ improperly relied on her activities of daily living. Although it is appropriate for an ALJ to consider a claimant's daily activities as a factor when evaluating her subjective symptoms, the Seventh Circuit Court of Appeals has cautioned that a person's ability to perform daily activities does not necessarily translate into an ability to work full time. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help

from other persons … , and is not held to a minimum standard of performance, as she would be by an employer."). However, an ALJ may discuss a claimant's daily activities when assessing whether her subjective symptoms limit her in the way she alleges. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) ("The ALJ did not equate [the claimant's] ability to perform certain activities of daily living with an ability to work full time. Instead, he used her reported activities to assess the credibility of her statements concerning the intensity, persistence, or limited effects of her symptoms …."). Here, the ALJ did not improperly equate Lovatto's ability to perform daily activities with an ability to perform full time work. Instead, the ALJ found that these daily activities were inconsistent with her reports of being unable to get along with others and her multiple reports of disabling pain. This is proper use of daily activities to discuss subjective symptoms, as the ALJ discussed daily activities as one factor amongst many to build the logical bridge from the evidence in the record and the ALJ's decision regarding Lovatto's subjective symptoms.

Next, Lovatto argues that the ALJ failed to discuss the remainder of the factors required by SSR 16-3p and 20 C.F.R. § 404.1529. Specifically, she alleges that the ALJ failed to take into account her medications and "aggressive treatment" needed to relieve her symptoms and pain. The ALJ considered her prescribed medication regimen and other treatments, including physical therapy and surgery in order to relieve pain and symptoms. (AR 37-41). For instance, although Lovatto reported she could not do exercise or physical therapy, the evidence showed that she improved during physical therapy and walked the track at the YMCA. (AR 37-39). The ALJ also discussed her medication regimen and what medications she was on, as well as which she was unable to tolerate. (AR 40). The ALJ further noted that the evidence showed that her conditions were controlled on the medications. (AR 40). Finally, the ALJ acknowledges Lovatto's need for back surgery, but noted that she showed great improvement in symptoms following recovery from her surgery. (AR 37-40). The ALJ did not err in evaluating Lovatto's symptoms under SSR 16-3p. While Lovatto may not agree with the outcome, the Court cannot reweigh evidence where the ALJ has built the requisite logical bridge from the evidence to her conclusion.

13

Finally, Lovatto argues that the ALJ erred by failing to consider her physical and mental impairments in combination. However, Lovatto does not offer any evidence to show that the combination of her impairments caused further limitations than what the ALJ provided. On the contrary, Lovatto offers no more than a cursory list of her non-severe impairments along with a few cases that require the ALJ to consider the combined effect of all impairments, including non-severe. *Martinez v. Astrue*, 630 F.3d 693, 697-98 (7th Cir. 2011). The burden of proof lies with the plaintiff to show that her impairments, alone or in combination, cause further restrictions and limitations. *Clifford*, 227 F.3d at 868; *Luna*, 22 F.3d at 693. Lovatto offers no evidence to support her assertion, and her argument is unsupported and underdeveloped. Underdeveloped arguments are waived, and the Court will not make a claimant's argument for her. *Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019). However, it is possible that proper consideration of Lovatto's mental impairments on remand might alter how the ALJ evaluates Lovatto's subjective symptoms and the combination of her severe and non-severe impairments. Therefore, the ALJ should properly consider all of the relevant information on remand.

## IV.  CONCLUSION

For the foregoing reasons, I RECOMMEND that the Commissioner's final decision be REVERSED and the case REMANDED to the Commissioner for further proceedings in accordance with this Report and Recommendation. The Clerk is directed to send a copy of this Report and Recommendation to counsel for the parties. NOTICE IS HEREBY GIVEN that within 14 days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER. *See generally Thomas v. Arn*,

474 U.S. 140 (1985); *Lerro v. Quaker Oats Co.*, 84 F.3d 239, 241-42 (7th Cir. 1996).

    Entered this 30th day of October 2020.

                                              /s/ Susan Collins
                                              Susan Collins
                                              United States Magistrate Judge